### In re McCAULEY et al.

(Supreme Court, Special Term, Kings County. December, 1913.)

WILLS (§ 636*)—CONSTRUCTION—VESTED OR CONTINGENT ESTATES—REMAINDERS.

 Where testator devised his property to his widow during her life, and, after her death, to his son, if living, and, if not, then to the son's widow and children, share and share alike, the son took a vested remainder, subject to be divested by his death before the termination of the life estate, and the son's wife and children took a contingent remainder, which, on the son's death before the termination of the life estate, became vested, and, as such, the widow's interest was not divested by her remarriage before the termination of the life estate, since the will did not specifically require that she remain a widow, and an estate once vested will not be divested except by words clearly expressing such intention.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1514–1518; Dec. Dig. § 636.*]

Application for leave to sell real estate of infants. Report of referee confirmed.

Dykman, Oeland & Kuhn, of Brooklyn, for petitioners.

BENEDICT, J. I agree with the conclusion of the referee in this proceeding. The facts are these: James McCauley, the testator, died seised of the real property affected by this proceeding for the sale of infants' real estate upon the 6th day of June, 1906, leaving him surviving his widow, Anne McCauley, and his sons, James Joseph McCauley and John Francis McCauley. At the time of his death, and doubtless also on the 26th day of May, 1905, which was the date of his will, each of these two sons was married and each of them had two children.

As to the share of the testator's real property which passed to his son James Joseph (who survived the testator's widow Anne McCauley) and from him to the infant petitioners John Richmond McCauley and Helen Marie McCauley, subject to the dower right of their mother, Helen McCauley, no question arises, and we are concerned only with the share which passed to the infant petitioners John Francis McCauley and Eugene Edward McCauley.

As regards this share the will of the testator provides as follows, after making sundry bequests of personal property:

"Third. I give, devise and bequeath to my wife Anne McCauley and to my sister Anne McCauley all the rest, residue and remainder of my property, real, personal or mixed, and wheresoever situated in trust nevertheless for the following purposes: A. To collect all the rents, issues and profits of my property, real, personal and mixed. B. To pay all my just debts and funeral expenses and the expenses of the administration of my estate, as soon as practicable after my decease. C. To pay all taxes, assessments, interest, insurance, repairs and expenses necessary to keep my real estate in good condition. D. To pay all the net income from my estate, real, personal and mixed, to my wife Anne McCauley, during the term of her natural life for her own use.

"Fourth. On the death of my wife I give, devise and bequeath all my property as follows: A. * * * (Share of James Joseph McCauley). B. To my son John Francis McCauley if living one undivided one-half of all my property, real, personal or mixed, and if he is not then living then to his widow, child or children, share and share alike, and if there is no widow but child or children then to such child or such children share and share alike and if there is no child or children but a widow then I give to said widow one undivided quarter of my property and the other quarter to be added to the one-half share of my property, as provided for in the previous sub-division A. of this my will. If there is no widow child or children then I give the whole of my property as provided for in the previous sub-division A. of this my will."

As has been mentioned, Anne McCauley, the widow of the testator, survived him and died on April 22, 1912. His son John Francis McCauley had predeceased the widow, his mother, upon January 17, 1908, leaving the two infant petitioners John Francis McCauley and Eugene Edward McCauley and his widow, their mother, Anna McCauley, him surviving. Anna McCauley, on February 21, 1911, during the lifetime of the testator's widow, married William J. Clark, and the question therefore is presented whether she became entitled, upon the death of the testator's widow, on April 22, 1912, to take one-sixth of the estate of the said testator James McCauley, equally with each of her two infant children, or whether they are each entitled to one-fourth of the testator's estate.

If, upon the death of the testator's widow, Anna McCauley was the widow of John Francis McCauley, she would clearly be entitled to one-third of the share which he would have inherited had he survived his mother, Anne McCauley. Did the marriage of Anna McCauley during the lifetime of Anne McCauley operate to exclude her from the provisions of the will made for the widow of John Francis McCauley. The question appears not to have been definitely passed on in the courts of this state so far as the researches of counsel and my own examination have disclosed. The solution of the question involves the consideration of whether the provisions of the will in favor of the son John Francis McCauley were vested or contingent. The primary intention of the testator, in so far as it may be understood from the language which he employs, was, I think, to provide for his son John Francis McCauley and the widow and children of that son and similarly for his other son and his widow and children, after the provision for the life of the testator's widow had been satisfied, and to effect this purpose the testator appears to have provided against any possibility

of intestacy as to the share of each son by specifying all of the several contingencies which could happen during the lifetime of his widow. If this be so, then I think it is clear that during the lifetime of the testator's widow his son John Francis McCauley took a vested remainder in one-half of the testator's residuary estate, but subject to be divested by his death during the widow's lifetime and his (John Francis') wife and children took a contingent remainder subject to its being extinguished by the survival of John Francis at the time of the death of the testator's widow.

When John Francis McCauley died, the remainder so vested in him became divested, and the contingent remainders vested in his widow and children became vested remainders, subject as to each of them to be divested by the death of each in the lifetime of the testator's widow. Did the fact that the widow of John Francis, in the lifetime of the testator's widow and before the remainder so vested in her had become vested in possession, married again, operate to defeat or divest her interest in the said estate? It is a primary canon of interpretation in the law of wills that an estate once vested will not be divested except by words in the will clearly expressing such an intention, and this rule is too well established to require the citation of authorities. It should be observed that the will in making provision for the widow of the son John Francis does not specifically require that she should remain his widow at the termination of the life estate. Had it done so, I should have little hesitation in holding that the lady had lost the property with the title of "widow" by her marriage. Bouvier says:

"In legal writings widow is an addition given to a woman who is unmarried and whose husband is dead. A widow who has married again cannot be a widow. 20 Q. B. D. 103."

Worcester defines the word thus:

"A woman whose husband is dead and who remains unmarried."

And Webster, in the unabridged edition of 1844:

"A woman who has lost her husband by death and has not taken another—one long bereaved of a husband."

In Com. v. Powell, 51 Pa. 440, Thompson, J., said:

"In common parlance, we know the term 'widow' means an unmarried woman. * * * The word is so entirely and exclusively descriptive of an unmarried condition, having once been married, that any other sense would be figurative."

See, also, Kerns' Appeal, 120 Pa. 527, 14 Atl. 435; Burk v. Gleason, 46 Pa. 297; Shumate v. McGarity, 83 Pa. 38. Judge Van Brunt, in Matter of Kaufman, 61 Hun, at page 332, 16 N. Y. Supp. at page 114, in speaking of the provisions of the Revised Statutes which declare that a will executed by an unmarried woman would be deemed revoked by her subsequent marriage, says:

"We do not see that there is any room for argument, as a widow is certainly not a married woman; and if she is not the statute applies."

I might have contented myself with a simple confirmation of the referee's report, were it not for the fact that the argument of the

petitioners' attorneys proceeds upon what I conceive to be an erroneous theory, based upon a dictum contained in the opinion of the surrogate of Madison county in Matter of Ray, 13 Misc. Rep. 480, 35 N. Y. Supp. 481, the reasoning of which does not commend itself to me.

The report of the referee, which holds that Anna Clark is entitled to an undivided one-sixth interest in the premises to be sold, will be confirmed.