COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Bumgardner and Agee
Argued at Salem, Virginia


ROGER CRAIG WILLIAMS

                                        MEMORANDUM OPINION* BY
v.    Record No. 2878-00-3        JUDGE RUDOLPH BUMGARDNER, III
                                            OCTOBER 23, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                  Duncan M. Byrd, Jr., Judge

          Ross S. Haine, Assistant Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Jennifer Franklin, Assistant Attorney General
          (Randolph A. Beales, Acting Attorney General;
          Thomas M. McKenna, Assistant Attorney
          General, on brief), for appellee.


     The trial court convicted Roger Craig Williams of petit

larceny and possession of cocaine.  On appeal, he contends the

trial court erred in denying his motion to suppress evidence

seized during a warrantless search of his hotel room.  Finding

no error, we affirm.

     "In reviewing the trial court's denial of a motion to

suppress, 'the burden is upon [the defendant] to show that the

ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'"  McGee v.

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  While we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause, "we review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996).

At approximately 7:15 p.m. on Sunday, May 28, 2000, Rockbridge County Deputy Sheriff J. Honts arrested the defendant at White's Truck Stop and Wilco Travel Plaza for being drunk in public and petit larceny, third or subsequent offense.  Several stolen atlases were recovered from the defendant.  During the arrest, Shirley Broughman, a desk clerk at Day's Inn, told Honts that the defendant was a guest at the hotel and asked him to keep her abreast of what happened to him.

Honts telephoned Broughman later that evening and informed her that the magistrate was holding the defendant until Tuesday morning.  He told her that the magistrate had scheduled a bond hearing for Tuesday because Monday was Memorial Day.  Broughman stated that the defendant had paid for only one night and she was not sure what to do.  Broughman confirmed the hotel's policy with her manager, and called Honts to tell him that she would, in fact, be checking the defendant out since he was not coming back.  She asked Honts to take the defendant's belongings to him.

-

When Honts arrived at the hotel, Broughman had already checked the defendant out. Broughman, Honts, and another hotel employee went to the defendant's room. Honts stood behind Broughman in the hallway as she opened the door. Once the door was open, Honts observed in plain view a stack of atlases similar to those the defendant was accused of stealing. He then entered and searched the room.

In denying the defendant's motion to suppress, the trial court found that the hotel invited Deputy Honts to the hotel and that he was present as "an observer," stating, "[h]e certainly had a right to be there and stand in the hallway." The court also found that after the hotel checked him out, before Honts arrived, the defendant had a diminished expectation of privacy. Upon checking him out, the hotel was obligated "to inventory the contents of the room." The court noted that Honts had apparent authority to collect the defendant's belongings.

The defendant contends the warrantless search of his room violated his Fourth Amendment rights because he had a reasonable expectation of privacy as a hotel guest and no exigent circumstances justified the search. We conclude the Fourth Amendment is not implicated because Honts did not conduct a search.

The Fourth Amendment protects a person from unreasonable searches and seizures conducted by state or government actors. Burdeau v. McDowell, 256 U.S. 465, 475 (1921). "[A] private

-

search, no matter how unreasonable, does not constitute a constitutional violation warranting the suppression of evidence seized." Mills v. Commonwealth, 14 Va. App. 459, 463, 418 S.E.2d 718, 720 (1992) (citations omitted). Consequently, the exclusionary rule applies to searches by private individuals only when they are acting as agents of the government. United States v. Jacobsen, 466 U.S. 109, 113-14 (1984); Harmon v. Commonwealth, 209 Va. 574, 577, 166 S.E.2d 232, 234 (1969). Whether an individual is acting as an agent of the government "'turns on the degree of the Government's participation in the private party's activities, a question [of fact] that can only be resolved "in light of all the circumstances."'" Duarte v. Commonwealth, 12 Va. App. 1023, 1026, 407 S.E.2d 41, 42 (1991) (citations omitted); Mills, 14 Va. App. at 463, 418 S.E.2d at 720.

The evidence established that the hotel, on its own initiative and pursuant to its established policy, checked the defendant out after learning that he would not be coming back. Its policy was based on its private interest in preparing the room for a new guest at the earliest possible time. "'[I]t is commonly known that those who operate [hotels and motels] are understandably interested in maximum paying occupancy and thus could be expected promptly to clear the room of a guest who has overstayed so that another guest may be given the room.'" McCary v. Commonwealth, 36 Va. App. 27, 37, 548 S.E.2d 239, 244

-

(2001) (citation omitted).  See also United States v. Jackson, 585 F.2d 653, 658 (4th Cir. 1978) (in dicta court recognized that when defendant stays beyond rental period hotel may repossess room, thereby destroying his expectation of privacy).

Upon checking the defendant out, the hotel was obligated to secure his personal property.  In order to do so, the hotel was permitted to enter the defendant's room and to collect and secure his property.  The hotel invited Honts to be present and to take the defendant's belongings to him.  By the time Honts arrived, Broughman had checked the defendant out, but had waited for Honts to arrive before entering the defendant's room.  Honts stood in the hallway, behind Broughman, as she opened the defendant's room.  Broughman's conduct furthered the hotel's private business objectives.  She was not acting as an agent of the government.  See Duarte, 12 Va. App. at 1026-27, 407 S.E.2d at 42-43 (evidence seized when college searched defendant's room was admissible, college not acting as agents of the police).

Honts did not request the hotel to check the defendant out or to permit him to enter the defendant's room.  He was an invitee of the hotel.  "[A] law enforcement 'officer's observations from a public vantage point where he has a right to be' and from which the activities or objects he observes are 'clearly visible' do not constitute a search within the meaning of the Fourth Amendment."  United States v. Taylor, 90 F.3d 903, 908 (4th Cir. 1996) (officer's observations of dining room from

-

street, walkway, and porch not a "search") (citations omitted). Honts's presence does not make otherwise reasonable official conduct unreasonable. Jacobsen, 466 U.S. at 117 (government can use disclosed, no longer private, information); id. at 119 ("viewing of what a private party [hotel clerk] had freely made available for [officer's] inspection did not violate the Fourth Amendment").

The hotel was not acting as a government agent, or at its direction. Its actions were lawful and served its private legitimate business concerns. The police did not ask the hotel to check the defendant out, did not request permission to search the defendant's room, did not ask them to open the defendant's door, and did not enter the room before they had probable cause to search it. The hotel's decisions to check the defendant out, to invite the police to take his belongings, and to wait for the officer to arrive before entering the room, were made independently of any request by police.

Accordingly, we conclude that the defendant's Fourth Amendment rights were not implicated and the motion to suppress was properly denied.

Affirmed.

-